UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BILLY BROWN,

    Plaintiff,

    v.                                 CAUSE NO. 3:22-CV-415-JD-MGG

SPATES, et al.,

    Defendants.

OPINION AND ORDER

Billy Brown, a prisoner proceeding without a lawyer, filed a complaint under 42 U.S.C. § 1983. (ECF 1.) Under 28 U.S.C. § 1915A, the court must screen the complaint to determine whether it states a claim for relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Mr. Brown is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Mr. Brown is currently incarcerated at Westville Correctional Facility ("Westville"). He alleges that on March 29, 2022, an incident occurred when he was going to the commissary. He claims his unit—"C2"—was called for "make up" commissary, which he was going to attend because he had missed the usual commissary visit earlier in the week. As he was walking toward the commissary,

Sergeant Spates (first name unknown) said, "Where are you going?" Mr. Brown responded that he was going to "make up commissary," but Sergeant Spates told him they hadn't called C2 yet. Mr. Brown turned to leave, but the sergeant told him to "go to the squad room." Mr. Brown said he would go back to his dormitory so that he could go to makeup commissary when his unit was called. The sergeant responded, "No, you're not," and then called for back-up.

Sergeant Robert Deu arrived in response to the call and asked what was happening. As Mr. Brown was explaining about the commissary visit, Sergeant Deu allegedly "tackled" him from behind and "took [him] to the floor." Sergeant Deu then sat on Mr. Brown's back while Sergeant Spates assisted. Sergeant Deu yelled several times for him to put his hands behind his back. It appears that he did not comply, although he appears to state that he could not comply because one of the officers had his arms pinned down. As this was happening, Captain Yancey (first name unknown) arrived and asked what was going on. Mr. Brown did not hear whether there was any reply from Sergeant Spates or Sergeant Deu. While Mr. Brown was pinned on the floor, Sergeant Spates allegedly "fondled" Mr. Brown's testicles. Mr. Brown realized what Sergeant Spates was doing and yelled out, "Who's playing with my nuts?" at which point Sergeant Spates "snatched" his hand away. Mr. Brown was then handcuffed and escorted back to his dorm.

As he was being escorted back to his dormitory by Sergeant Spates, Mr. Brown asked, "Who was that playing with my balls?" Sergeant Spates responded, "That's how we calm you all down." Sergeant Spates allegedly had a "sly smile" on his face when he

made this statement. Mr. Brown asserts that he was molested by his father when he was a boy, and that Sergeant Spates' actions and comment caused him to "strike out" in anger. He does not elaborate on what he did, but it can be discerned that he was taken to disciplinary segregation after this incident. It also appears he was found guilty of some disciplinary infraction for which he lost earned-time credits.

Mr. Brown further claims that Sergeant Deu came to see him after this incident and swore that it was not him who touched his testicles. It can be discerned that Mr. Brown made an internal complaint pursuant to the Prison Rape Elimination Act ("PREA"), presumably against Sergeant Spates, following this incident. He claims that he spoke with two different investigators in early May 2022, but has heard nothing further. Based on these events, he sues Sergeant Spates, Sergeant Deu, Captain Yancey, and the Warden of Westville Correctional Facility John Galipeau. He seeks monetary damages, the return of earned-time credits he lost as a result of the disciplinary proceeding, and other relief.

Under the Eighth Amendment, inmates cannot be subjected to excessive force. The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (citation omitted). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.*

However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992). Rather, "[t]he Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* (citations and quotation marks omitted). The purpose of this requirement is to "emphasize an important difference" between constitutional law and tort law. *Guitron v. Paul*, 675 F.3d 1044, 1046 (7th Cir. 2012). "In tort law, any unconsented and offensive touching is a battery," and even a "tickle with a feather can lead to an award of damages." *Id.* Such is not the case with constitutional law. *Id.* Indeed, in the prison context, "[c]ustodians must be able to handle, sometimes manhandle, their charges, if a building crammed with disgruntled people who disdain authority (that's how the prisoners came to be there, after all) is to be manageable." *Id.* Nevertheless, prisoners are protected by the Eighth Amendment from conduct that is "so totally without penological justification that it results in the gratuitous infliction of suffering." *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003). In an analogous context, when a pat-down search of an inmate is "conducted in a harassing manner intended to humiliate and inflict psychological pain," the Eighth Amendment may be violated. *Calhoun*, 319 F.3d at 939; *see also Henry v. Hulett*, 969 F.3d 769, 781 (7th Cir. 2020) ("The Eighth Amendment safeguards prisoners against the use of [bodily] searches that correctional officers subjectively intend as a form of punishment."

4

Applying those principles here, Mr. Brown has plausibly alleged an Eighth Amendment claim against Sergeant Spates and Sergeant Deu. It appears he may have left out elements of the story, as it is unclear why the incident escalated so quickly with Sergeant Spates finding a need to call for back up and Sergeant Deu responding with force when, by his account, he was merely explaining the situation. But giving him the inferences he is entitled to at this stage, he plausibly alleges that Sergeant Deu used more force than was necessary under the circumstances, tackling him from behind and pinning him to the floor, even though he was allegedly not offering any resistance. Likewise, he plausibly alleges that Sergeant Spates "fondled" his testicles while he was pinned to the floor, not for any legitimate penological reason but to tease and humiliate him. He will be permitted to proceed against these two defendants under the Eighth Amendment for damages.

He also sues Captain Yancey, who arrived on the scene after this incident was underway. Liability under section 1983 is based on personal responsibility, and there is nothing in the complaint from which it can be plausibly inferred that Captain Yancey used excessive force against Mr. Brown or touched him inappropriately. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018). State actors "who have a realistic opportunity to step forward and prevent a fellow [state actor] from violating a plaintiff's rights through the use of excessive force but fail to do so" may be held liable. *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000). Here, however, it can be discerned that the events Mr. Brown describes were rapidly evolving, and that when Captain Yancey arrived on the scene two officers were scrambling on the floor with Mr. Brown, with one of them

5

yelling for Mr. Brown to put his hands behind his back. It can be discerned that Mr. Brown was lying face down when the alleged fondling occurred, and that it lasted only a few seconds before Mr. Brown yelled out and Sergeant Spates quickly removed his hand. Shortly after the captain's arrival on the scene, the incident ended with Mr. Brown being handcuffed and escorted away. There is no factual content from which it can be plausibly inferred that Captain Yancey knew the officers were using excessive force or acting inappropriately, had a reasonable opportunity to intervene to prevent their actions, and simply chose to stand by and do nothing. Captain Yancey will be dismissed.

Mr. Brown also sues the Warden, but there are no allegations from which the court can plausibly infer that this high-ranking official was personally involved in this incident. There is no general supervisory liability under section 1983, and the Warden cannot be held liable solely because he is the official in charge of the facility. *J.K.J. v. Polk Cty.*, 960 F.3d 367, 377 (7th Cir. 2020). This defendant will be dismissed.

Although unclear, Mr. Brown may also be trying to assert a claim directly under PREA, 34 U.S.C. §§ 30301–09. However, this statute does not create a private right of action. *Winners v. Hyatt*, No. 3:20-CV-1035-JD-MGG, 2021 WL 1165140, at *2 (N.D. Ind. Mar. 25, 2021). To the extent he is claiming prison staff did not follow internal prison policies adopted pursuant to PREA in investigating his complaint, this would not state a plausible federal claim either. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations"). Additionally, the court has no ability

6

to restore Mr. Brown's earned-time credits lost in the disciplinary proceeding in this civil rights case. Instead, his sole remedy is through habeas corpus.[1] *See* 28 U.S.C. § 2254; *Preiser v. Rodriguez,* 411 U.S. 475, 488 (1973). Any such claims in the complaint will be dismissed.

Finally, along with his complaint, Mr. Brown filed a one-page motion seeking a preliminary injunction. (ECF 4.) He asserts without elaboration that he "has received threats (verbal) of physical harm to his person" and "fears for his safety if he remains at Westville." He also claims he is "not getting the mental health assistance from mental health." (*Id.*) He asks that the court order prison officials to give him an immediate transfer to another "level 1 or 2" correctional facility. (*Id.*)

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As to the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However,

---

[1] Mr. Brown cannot pursue any claim in this lawsuit that is inconsistent with his disciplinary conviction unless it is overturned or set aside. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *see also Edwards v. Balisok*, 520 U.S. 641, 643 (1997) (*Heck* applies to prison disciplinary convictions). At this stage, it is unclear what Mr. Brown was convicted of doing in the disciplinary case.

7

"a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). As to the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

"Mandatory preliminary injunctions" requiring the defendant to take affirmative acts are viewed with particular caution and are "sparingly issued[.]" *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks omitted). Additionally, in the prison context, the court's ability to grant injunctive relief is significantly circumscribed; any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citations and internal quotation marks omitted); *see also Rasho v. Jeffreys*, 22 F.4th 703, 711-13 (7th Cir. 2022) (outlining the strict limitations on granting injunctive relief under the Prison Litigation Reform Act).

As a preliminary matter, Mr. Brown's motion is not signed, even though Federal Rule of Civil Procedure 11(a) requires that every filing be signed by an attorney of record, or by the party personally if the party is unrepresented as Mr. Brown is. FED. R. CIV. P. 11(a). Additionally, he does not provide any details about what threats he has received, when these threats occurred, who made them, and why he believes himself to be in danger. He references "other inmates," but his complaint does not include any

8

allegations about the failure to protect him from harm posed by other inmates, and he has not been granted leave to proceed on any such claim. He cannot obtain injunctive relief related to issues that fall outside the scope of this lawsuit. *See Westefer*, 682 F.3d at 681. He also mentions danger posed by "officers," without naming the individuals to whom he is referring or explaining why he believes himself to be in danger. His complaint outlines one incident of excessive force occurring two months ago, and there is nothing in the complaint or the motion from which the court can plausibly infer that unidentified correctional officers pose a risk of harm to Mr. Brown's safety at the present time. There is nothing in the complaint or motion to indicate that Sergeant Spates or Sergeant Deu have threatened him or otherwise pose a danger to his safety at present.

Likewise, he does not include any allegations about the denial of mental health treatment in his complaint or motion, or even explain what his mental health issues are. Nor is it evident that a claim pertaining to the denial of medical care would be sufficiently related to a claim about a past incident of excessive force so as to proceed in the same lawsuit. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (unrelated claims against unrelated defendants belong in different lawsuits); *see also Henderson v. Wall*, No. 20-1455, 2021 WL 5102915, at *1 (7th Cir. Nov. 3, 2021) (directing district courts to ensure that prisoners are not permitted to lump unrelated claims against unrelated defendants together in one lawsuit so as to avoid the provisions of the Prison Litigation Reform Act).

At present, Mr. Brown has not demonstrated an entitlement to preliminary injunctive relief. His motion will be denied. If, after reviewing this order, he continues to believe he is in need of immediate relief in connection with the claim he was granted leave to proceed on against Sergeant Deu and Sergeant Spates, he is free to renew his request, but he must outline in detail why he believes himself to be in danger. If he has other unrelated claims against unrelated defendants he wants to pursue, he must do in a separate lawsuit. For his convenience, the clerk will send him a blank complaint form should he wish to pursue this course.

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Sergeant Deu and Sergeant Spates for using excessive force against him and touching in a manner designed to humiliate him on March 29, 2022, in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Captain Yancey and Superintendent of Westville Correctional Facility as defendants;

(4) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Sergeant Robert Deu and Sergeant Spates (first name unknown) at Indiana Department of Correction and to send them a copy of this order and the complaint pursuant to 28 U.S.C. § 1915(d);

(5) ORDERS the Indiana Department of Correction to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent such information is available;

(6) ORDERS Sergeant Deu and Sergeant Spates to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claim for which the plaintiff has been granted leave to proceed in this screening order;

(7) DENIES the motion for a preliminary injunction (ECF 4) without prejudice; and

(8) DIRECTS the clerk to send the plaintiff a blank prisoner complaint form.

SO ORDERED on May 27, 2022

/s/JON E. DEGUILIO  
CHIEF JUDGE  
UNITED STATES DISTRICT COURT